UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

          - v. -                    :

KEVIN DELVALLE,                     :

                    Defendant.      :

- - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/11/19

**ORDER**

S3 17 CR. 314 (VM)

WHEREAS, with the defendant's consent, his guilty plea allocution was made before a United States Magistrate Judge on November 15, 2019;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that the defendant entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is accepted.

SO ORDERED:

Dated:     New York, New York
           December 10, 2019

                              _____
                              THE HONORABLE VICTOR MARRERO
                              UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - v. -                 :

                                       :

KEVIN DELVALLE,
    a/k/a "Kev,"
    a/k/a "Dev,"                    :

                                       :

              Defendant.

- - - - - - - - - - - - - - - - - X

**INFORMATION**

S3 17 Cr. 314 (VM)

### COUNT ONE

The United States Attorney charges:

1.    From at least in or about 2009, up to and including in or about 2011, in the Southern District of New York and elsewhere, KEVIN DELVALLE, a/k/a "Kev," a/k/a "Dev," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.    It was a part and an object of the conspiracy that KEVIN DELVALLE, a/k/a "Kev," a/k/a "Dev," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

3.    The controlled substance that KEVIN DELVALLE, a/k/a "Kev," a/k/a "Dev," the defendant, conspired to distribute and possess with the intent to distribute was 28 grams and more of

mixtures and substances containing a detectable quantity of cocaine base, in a form commonly known as "crack," in violation of 21 U.S.C. § 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

## FORFEITURE ALLEGATION

4.   As a result of committing the controlled substance offense charged in Count One of this Information, KEVIN DELVALLE, a/k/a "Kev," a/k/a "Dev," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense charged in Count One of this Information.

## Substitute Assets Provision

5.   If any of the above-described forfeitable property, as a result of any act or omission of KEVIN DELVALLE, a/k/a "Kev," a/k/a "Dev," the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

2

    c.  . has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

    (Title 21, United States Code, Section 853.)

GEOFFREY S. BERMAN
United States Attorney

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

KEVIN DELVALLE, a/k/a "Kev," a/k/a
"Dev,"

Defendant.

INFORMATION

S3 17 Cr. 314 (VM)

(21 U.S.C. § 846.)

GEOFFREY S. BERMAN
United States Attorney.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2019

Russell Neufeld, Esq.
99 Hudson Street
8th Floor
New York, NY 10013

### Re: United States v. Kevin Delvalle, S3 17 Cr. 314 (VM)

Dear Mr. Neufeld:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Kevin Delvalle ("the defendant") to Count One of the above-referenced Superseding Information (the "Information"). Count One charges the defendant with participating in a conspiracy to distribute and possess with intent to distribute 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), which carries a mandatory minimum term of imprisonment of five years, a maximum term of imprisonment of forty years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of four years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Section 841(b)(1)(B), of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution.

The defendant agrees to waive any defense or argument based on the statute of limitations applicable to Count One.

As a condition of his guilty plea, the defendant will admit to his participation in the murder of Donnell Harris on or about August 31, 2010.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his participation in a conspiracy to distribute and possess with intent to distribute cocaine base from at least in or about 2009, up to and including in or about 2011, as charged in Count One of the Information, and his participation in the murder of Donnell Harris on or about August 31, 2010, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to

18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant furthermore admits the forfeiture allegation with respect to Count One of the Information and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), any and all property constituting or derived from the proceeds the defendant obtained directly or indirectly as a result of the offense charged in the Information and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the offense charged in the Information (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant further agrees to make restitution in an amount ordered by the Court in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code, and that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC §3563(b)(2), or of supervised release, *see* 18 USC §3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

    1. The November 1, 2018 Guidelines manual applies in this case.

    2. The Guideline applicable to the offense charged under Count One is U.S.S.G. 2D1.1. Pursuant to U.S.S.G. § 2D1.1(d), because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, the Guidelines range is the greater of (a) the offense level set forth in U.S.S.G. § 2A1.1, or (b) the offense level otherwise applicable under § 2D1.1.

    3. Pursuant to U.S.S.G. § 2A1.1, the offense level is 43.

    4. Pursuant to U.S.S.G. § 2D.1(c)(8), because the offense involved at least 28 grams but less than 112 grams of cocaine base, the offense level is 24.

    5. Because the offense level under U.S.S.G. § 2A1.1 is greater than the offense level otherwise applicable, the offense level for Count One is 43.

    6. Pursuant to U.S.S.G. § 3B1.1(c), because the defendant was an organizer, leader, manager, or supervisor in criminal activity involving less than five participants, the offense level is increased by two levels.

7.  Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 42.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has zero criminal history points.

1.  On or about August 4, 2012, the defendant was convicted, in Bronx County Criminal Court, of Disorderly Conduct, in violation of New York Penal Law § 240.20. He was sentenced to a conditional discharge. Pursuant to U.S.S.G. § 4A1.2(c)(1), this sentence results in zero criminal history points.

2.  On or about May 4, 2006, the defendant was convicted, in Bronx County Criminal Court, of Disorderly Conduct, in violation of New York Penal Law § 240.20. He was sentenced to conditional discharge. Pursuant to U.S.S.G. § 4A1.2(c)(1), this sentence results in zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's Guidelines range would be 360 months to life imprisonment, with a mandatory minimum term of 60 months' imprisonment. Pursuant to U.S.S.G. § 5G1.1(c), because the statutorily authorized maximum sentence of 480 months is less than the maximum of the otherwise applicable Guidelines range, the stipulated Guidelines range is 360 to 480 months' imprisonment (the "Stipulated Guidelines Range"), with a mandatory minimum term of 60 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 40, the applicable fine range is $50,000 to $5,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 360 to 480 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court

employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $5,000,000 and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Jessica Feinstein
Allison Nichols
Assistant United States Attorneys
(212) 637-1946

APPROVED:

_____
Michael Gerber
Chief, Violent & Organized Crime Unit

AGREED AND CONSENTED TO:

_____
KEVIN DELVALLE

11-15-19
_____
DATE

APPROVED:

_____
RUSSEL NEUFELD, ESQ.
Attorney for Kevin Delvalle

11-15-19
_____
DATE

2019.04.05

JBFHDELP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                          17 Cr. 314 (VM)(KHP)

5  KEVIN DELVALLE,

6                                      Plea

7          Defendant.

   ------------------------------x
8
                                       New York, N.Y.
9                                      November 15, 2019
                                       11:45 a.m.
10

11 Before:

12          HON. KATHARINE H. PARKER,

13                                     Magistrate Judge

14

15                    APPEARANCES

16 GEOFFREY S. BERMAN
        United States Attorney for the
17      Southern District of New York
   JESSICA K. FEINSTEIN
18      Assistant United States Attorney

19 RUSSELL T. NEUFELD
   ANTHONY RICCO (via telephone)
20      Attorneys for Defendant

21 Also Present:  Leonard A. Rollock, Jr. Defense Paralegal

22

23

24

25

1      (Case called)

2          MS. FEINSTEIN:  Good morning, your Honor.  Jessica

3   Feinstein, for the government.  With me at counsel table is

4   Special Agent Steve Brusini of the U.S. Attorney's Office.

5          THE COURT:  Good morning.

6          MR. NEUFELD:  Good morning, your Honor.  Russell

7   Neufeld for Mr. Delvalle.  On the phone, on speakerphone, is

8   advisory counsel Anthony Ricco, and joining me at counsel table

9   is Leonard Rollock, a paralegal associated with Mr. Ricco's

10  office.

11         THE COURT:  All right.  Good morning.

12         MR. RICCO:  Good morning, your Honor.

13         THE COURT:  Good morning, Mr. Ricco.  Can you hear me

14  clearly?

15         MR. RICCO:  Yes, I can, your Honor.  Thank you very

16  much for accommodating me.  I'm out at a CJA death penalty

17  conference in San Diego.

18         THE COURT:  No problem.  Happy to accommodate you.

19         Good morning, Mr. Delvalle.  I'm Judge Parker.  How

20  are you today?

21         THE DEFENDANT:  Fine.

22         THE COURT:  I'm here for a plea allocution in the

23  matter against you, and what I want to start out doing is place

24  you under oath.  So the courtroom deputy is going to place you

25  under oath.

1    THE DEPUTY CLERK:  Please stand and raise your right

2    hand.

3         (Defendant sworn)

4         THE COURT:  Mr. Delvalle, you now have been placed

5    under oath, so this means that any statements that you make

6    here may be used against you by the government in a prosecution

7    for perjury, or for making false statements.

8         Do you understand?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Just push it closer and make sure the

11   green light is on.

12        MR. NEUFELD:  Green light is on.

13        THE COURT:  OK.  Wonderful.

14        Mr. Delvalle, I understand you wish to plead guilty to

15   Count One of the information against you.  That count charges

16   that from in or about 2009 to in or about 2011, that you

17   intentionally conspired with others to distribute and possess

18   with intent to distribute 28 grams and more of crack cocaine,

19   in violation of Title 18 of the United States Code, Sections

20   846, 841(b)(1)(B), and 841(a)(1).

21        The document that contains the charge to which you've

22   indicated you wish to plead guilty is called an information.

23   As you were informed when you were first arrested, you have the

24   right to an attorney during all court proceedings and all

25   questioning by the authorities, and you also have the right to

1   remain silent, as anything you say can be used against you.

2           Mr. Neufeld, have you reviewed the information with

3   your client, and does he waive its public reading?

4           MR. NEUFELD:  Yes.

5           THE COURT:  Mr. Delvalle, the information was issued

6   by the United States Attorney, not a grand jury.  Under the

7   U.S. Constitution, you have the right to be charged by an

8   indictment, which is issued by a grand jury instead of by an

9   information.  The grand jury is a group of 23 ordinary citizens

10  who are called to jury service to hear the government's

11  evidence in criminal cases and decide whether the evidence is

12  sufficient to justify bringing you to trial.  In order to

13  return an indictment, at least 12 of the grand jurors must vote

14  for indictment, finding there's probable cause to believe that

15  an offense was committed and that you committed it.  If you

16  give up your right to have the charges against you presented to

17  the grand jury, the case will proceed against you based on the

18  United States Attorney's information, just as if you had been

19  indicted.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now, I have a copy of a waiver of

23  indictment form that you've signed.  It's dated from today.

24  Did you review the waiver of indictment form with your lawyer

25  before you signed it?

1     THE DEFENDANT:  Yes.

2     THE COURT:  Do you understand that by signing the

3 waiver of indictment form, that you're giving up your right to

4 have your case presented to and considered by the grand jury?

5     THE DEFENDANT:  Yes.

6     THE COURT:  Have you discussed the advantages and

7 disadvantages of waiving indictment with your lawyer?

8     THE DEFENDANT:  Yes.

9     THE COURT:  Have any threats been made to you to get

10 you to sign the waiver of indictment?

11     THE DEFENDANT:  No.

12     THE COURT:  Besides the written plea agreement, have

13 any promises been made to you to get you to waive indictment?

14     THE DEFENDANT:  No.

15     THE COURT:  Do you still wish to give up your right to

16 have the charges against you presented and considered by the

17 grand jury?

18     THE DEFENDANT:  Yes.

19     THE COURT:  All right.  Your waiver's accepted.  The

20 record should reflect that Mr. Delvalle has waived indictment.

21     I'm going to deem you arraigned, and we'll proceed now

22 with the plea.

23     I have before me another document that's called

24 Consent to Proceed Before a United States Magistrate Judge on a

25 Felony Plea Allocution.  It bears your signature dated today.

1   What this form says is that you know you have the right to have

2   your plea taken by a United States district judge, but that

3   you're agreeing to have your plea taken by a United States

4   magistrate, such as myself.  And as a magistrate judge, I have

5   the authority to take your plea with your consent, and you're

6   entitled to all the same rights and protections as if you were

7   before the district judge.  You will be sentenced by the

8   district judge, though.

9        Before you sign the consent form, did your lawyer

10  explain it to you?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Did you sign it voluntarily?

13       THE DEFENDANT:  Yes.

14       THE COURT:  Do you still wish to proceed before

15  magistrate judge today?

16       THE DEFENDANT:  Yes.

17       THE COURT:  All right.  Your consent's accepted.

18       I'd like to explain a little bit more about the

19  proceeding today.  I'm going to ask you various questions.

20  Some are personal in nature, and others are about the crime to

21  which you wish to plead guilty.  I'm also going to review

22  various rights that you have and will be giving up by pleading

23  guilty.  The purpose of these questions is to make sure that

24  you understand your rights and to make sure that you're

25  voluntarily pleading guilty of your own free will and because

1    you are, in fact, guilty of the crime to which you're pleading

2    guilty.

3              Do you understand?

4              THE DEFENDANT:  Yes.

5              THE COURT:  If you don't understand anything I have

6    said or any of my questions, just stop me, and I'll try to

7    explain further.  OK?

8              THE DEFENDANT:  OK.

9              THE COURT:  What is your full name?

10             THE DEFENDANT:  Kevin Delvalle.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  32.

13             THE COURT:  Are you United States citizen?

14             THE DEFENDANT:  Yes.

15             THE COURT:  The reason I ask that question is because

16   pleading guilty to a felony can have serious ramifications for

17   noncitizens.

18             How far did you go in school?

19             THE DEFENDANT:  Seventh grade.

20             THE COURT:  Are you currently or have you recently

21   been under the care of a doctor or mental health professional?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Which one, a doctor or mental health

24   professional?

25             THE DEFENDANT:  Mental health.

JBFHDELP

1   THE COURT:  Are you taking any medications for that?

2   THE DEFENDANT:  Not at the moment.

3   THE COURT:  Not at the moment.

4   All right.  Have you ever been hospitalized for mental

5 illness?

6   THE DEFENDANT:  No.

7   THE COURT:  Do you have any -- are you taking any

8 prescribed medications that interfere with your ability to

9 think clearly or remember?

10   THE DEFENDANT:  No.

11   THE COURT:  Do you have any condition that affects

12 your ability to see or hear?

13   THE DEFENDANT:  No.

14   THE COURT:  Do you have any condition that affects

15 your ability to make judgments or decisions for yourself?

16   THE DEFENDANT:  No.

17   THE COURT:  Have you ever been treated or hospitalized

18 for alcoholism or drug addiction?

19   THE DEFENDANT:  No.

20   THE COURT:  As you sit here today, are you under the

21 influence of any mind-altering drug or alcohol?

22   THE DEFENDANT:  No.

23   THE COURT:  How are you feeling physically today?

24   THE DEFENDANT:  All right.

25   THE COURT:  Is your mind clear today?

1    THE DEFENDANT:  Not really.

2    THE COURT:  Not really?

3    THE DEFENDANT:  (Shakes head.)

4    THE COURT:  What's the concern?

5    THE DEFENDANT:  It's just a lot of stress.

6    THE COURT:  You feel stressed?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Well, that's understandable.  This is a

9  serious proceeding, and the decision that you're making is a

10  serious one.  Do you still want to go forward today?

11    THE DEFENDANT:  Yes.

12    THE COURT:  You do?

13    THE DEFENDANT:  Yes.

14    THE COURT:  You understand what's happening in this

15  proceeding?

16    THE DEFENDANT:  Yes.

17    THE COURT:  Does the government have any objections to

18  Mr. Delvalle's competence to plead at this time?

19    MS. FEINSTEIN:  No, your Honor.

20    THE COURT:  Mr. Neufeld, do you have any objections to

21  your client's competence to plead at this time?

22    MR. NEUFELD:  No, I don't.

23    THE COURT:  Mr. Ricco, do you have any concerns?

24  Mr. Ricco, are you still on the phone?  Mr. Ricco?

25    I'm not sure what's --

1          THE DEPUTY CLERK:  Mr. Ricco, you still on the phone?

2  Hello?

3          MR. RICCO:  Yes.

4          THE COURT:  Mr. Ricco, I just wanted to know if you

5  had any concerns about your client's competence to plead at

6  this time.

7          MR. RICCO:  No, I don't, your Honor.

8          THE COURT:  All right.

9          MR. RICCO:  Thank you.

10          THE COURT:  All right.  Thank you.

11          Mr. Delvalle, I'm now going to explain certain

12  constitutional rights that you have.  These are rights you'll

13  be giving up if you enter a guilty plea.  So please listen

14  carefully to what I'm about to say.  Again, if you don't

15  understand anything, stop me, and I'll explain it further.  Or

16  if you want to speak with your lawyer, just let me mow, and

17  I'll give you time to do that.  OK?

18          Under the Constitution and laws of the United States,

19  you have a right to plead not guilty to the charges contained

20  in the information.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If you plead not guilty, you'd be entitled

24  under the Constitution to a speedy and public trial by a jury

25  of the charges against you.  At the trial, you would be

1    presumed innocent, and the government would be required to

2    prove you guilty beyond a reasonable doubt before you could be

3    found guilty, and you could not be convicted unless a jury of

4    12 people agreed unanimously that you are guilty beyond a

5    reasonable doubt.

6         Do you understand all of that?

7         THE DEFENDANT:  Yes.

8         THE COURT:  If you decided to go to trial, at the

9    trial and at every stage of your case, you would have the right

10   to be represented by a lawyer; and if you could not afford a

11   lawyer, a lawyer would be appointed to represent you at the

12   government's expense.  So even if you retained private defense

13   counsel, if you ran out of money, an attorney would be

14   appointed to continue to represent you at the government's

15   expense, and you would be entitled to a lawyer all the way

16   through trial and not just for a guilty plea.  So your decision

17   to plead guilty should not depend on whether you can afford to

18   hire a lawyer.

19        Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  During a trial, witnesses for the

22   prosecution would have to come to court and testify in your

23   presence where you could see and hear them, and your lawyer

24   could cross-examine those witnesses.  If you wanted, your

25   lawyer could offer evidence in your defense.  You also would be

1  able to use the Court's power to compel witnesses to come to

2  court to testify in your defense, even if they didn't want to.

3        Do you understand all of this?

4        THE DEFENDANT:  Yes.

5        THE COURT:  At trial you'd have the right to testify

6  in your own defense if you wanted to, but you'd also have the

7  right not to testify.  And if you chose not to testify, that

8  could not be used against you in any way.  No inference or

9  suggestion of guilt would be permitted from the fact that you

10  did not testify.

11        Do you understand this?

12        THE DEFENDANT:  Yes.

13        THE COURT:  If you were convicted at trial, you'd have

14  the right to appeal that verdict to a higher court.

15        Do you understand?

16        THE DEFENDANT:  Yes.

17        THE COURT:  As I said before, you have the right to

18  plead not guilty.  So even right now, even as we sit here today

19  for the purpose of your entering a guilty plea, you have the

20  right to change your mind and persist in your not guilty plea

21  and go to trial.  But if you do plead guilty and your plea is

22  accepted, you will give up the right to a jury trial and all

23  the other rights that go with it that I've just described.

24        Do you understand?

25        THE DEFENDANT:  Yes.

1     THE COURT: Finally, if you do plead guilty, you're

2    also giving up your right not to incriminate yourself, and I'm

3    going to ask you questions about what you did in order to

4    satisfy myself that you are actually guilty. So by pleading

5    guilty, you'll be admitting to your factual as well as your

6    legal guilt.

7     Do you understand that?

8     THE DEFENDANT: Yes.

9     THE COURT: I'm now going to review the charge against

10   you in Count One of the information and the consequences of

11   pleading guilty to it.

12     Count One charges that from in or about 2009 to in or

13   about 2011, in the Southern District of New York and elsewhere,

14   that you intentionally conspired with others to distribute and

15   possess with intent to distribute two grams and more of crack

16   cocaine, in violation of Title 18 of the United States Code,

17   Section 846, 841(b)(1)(B), and 841(a)(1). I'm going to ask the

18   Assistant United States Attorney to state the elements of this

19   crime now, and the elements are the things that the government

20   has the burden of proving beyond a reasonable doubt at trial

21   before you can be convicted of this crime. OK.

22     MS. FEINSTEIN: Your Honor, the elements of Count One,

23   narcotics conspiracy, are as follows: First, there was an

24   agreement between two or more persons to violate the narcotics

25   laws of the United States; second, the defendant knowingly and

1  willfully entered into that conspiracy; and third, the object

2  of the conspiracy was the distribution and the possession with

3  intent to distribute 28 grams and more of cocaine base, which

4  is commonly known as crack.  The government would also have to

5  prove venue in the Southern District of New York by a

6  preponderance of the evidence.

7          THE COURT:  Thank you.

8          Mr. Delvalle, the government just stated the elements

9  of this crime.  Do you understand what the elements are?

10         THE DEFENDANT:  Yes.

11         THE COURT:  I'm now going to explain the maximum

12 possible penalty for this crime.  The maximum means the most

13 that could possibly be imposed.  It does not mean that's what

14 you necessarily will receive, but by pleading guilty, you're

15 exposing yourself to the possibility of receiving any

16 combination of punishments up to the maximum I'm about to

17 describe.

18         The maximum term of imprisonment for this crime is

19 40 years in prison.  It also carries a mandatory minimum

20 sentence of five years in prison, which means the district

21 judge cannot sentence you to less than that.  The crime also

22 carries a maximum term of supervised release of life.

23 Supervised release means that after you're released from

24 prison, you may be subject to supervision by the probation

25 department, and if you're placed on supervised release and then

1    violate any condition of supervised release, the district judge

2    can revoke the term of supervised release and return you to

3    prison without giving you credit for time served on

4    post-release supervision.  The crime also carries a mandatory

5    minimum term of supervised release of four years.

6              In addition to these restrictions on your liberty, the

7    maximum possible punishment for this crime also includes a

8    maximum fine of $5 million, twice the gross monetary gain you

9    derived from this crime or twice the gross monetary loss to

10   persons other than yourself, whichever is greatest.  The Court

11   also may order restitution to provide compensation to any

12   victims of the crime in an amount the Court deems is necessary

13   to compensate them.  And by pleading guilty, you're agreeing to

14   make restitution as ordered by the Court according to a payment

15   schedule set by the Court.

16             The Court also may require forfeiture of any proceeds

17   that you obtained directly or indirectly from the crime.

18   Forfeiture of money and property is in addition to any other

19   fine, cost of imprisonment, restitution, or other penalty the

20   Court may impose.  By pleading guilty, you'll be admitting to

21   forfeiture allegations in the information.

22             Do you understand all this?

23             THE DEFENDANT:  Yes.

24             THE COURT:  The Court's also required to impose a

25   mandatory special assessment, or fine, of $100.

1  (Defendant conferred with counsel)

2  THE COURT:  Are you ready to continue?

3  THE DEFENDANT:  Yes, I'm sorry.

4  THE COURT:  No problem.

5  I just want to make sure you heard the last thing I

6  said, which is that the Court is required to impose a mandatory

7  special assessment, or fine, of $100.

8  If you are not a citizen of the United States, a

9  guilty plea may also have adverse consequences for your ability

10  to remain in or return to the United States, including

11  presumptive removal and deportation, denial of citizenship, and

12  denial of admission to the United States in the future.  And if

13  that does happen, you would still be bound by your guilty plea.

14  You won't be able to withdraw it or challenge any immigration

15  consequences of your plea, regardless of any advice that you

16  may have received from your attorneys or others.  A guilty plea

17  also may result in the loss of certain valuable civil rights,

18  to the extent you have them today or could obtain them in the

19  future.  Those include the right to vote, the right to hold

20  public office, the right to serve on a jury, and the right to

21  possess any kind of firearm.

22  Do you understand all of this?

23  THE DEFENDANT:  Yes.

24  THE COURT:  Do you understand the charges against you

25  and the consequences of pleading guilty?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Have you had enough time to talk with your

3  lawyers about the charge against you and how you wish to plead?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Have you had enough time to talk with your

6  lawyers about the consequences of your plea, including any

7  immigration consequences?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Are you satisfied with your lawyer's

10  representation of you?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Now, I understand there's a written plea

13  agreement between you and the government.  I have a copy of it

14  here.  The front page is dated November 8, and it bears your

15  signature dated today.  Did you, in fact, sign this plea

16  agreement?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Did you read it before you signed it?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Did you discuss it with your lawyers

21  before you signed it?

22        THE DEFENDANT:  Yes.

23        THE COURT:   Did your lawyer explain all of its terms

24  and conditions to you?

25        THE DEFENDANT:  Yes.

1    THE COURT:  Under the plea agreement, the government

2    indicates that it has computed a sentencing range under the

3    sentencing guidelines that results in a range of -- that

4    results in 360 months to life in prison with a mandatory

5    minimum of 60 months in prison, but because the applicable law

6    authorizes a maximum sentence of 480 months, which is less than

7    the maximum under the sentencing guidelines -- hold on a

8    second.

9        You and the government agree that the appropriate

10    computation for your sentencing range is 360 to 480 months in

11    prison, with a mandatory minimum of 60 months in prison.

12    You're also agreeing in the plea agreement that the fine range

13    computation under the sentencing guidelines results in a fine

14    range of $50,000 to $5 million.

15        Counsel, did I state that correctly?

16        MS. FEINSTEIN:  That's correct, your Honor.

17        THE COURT:  Mr. Neufeld, yes?

18        MR. NEUFELD:  Yes.

19        THE COURT:  Now, under the plea agreement,

20    Mr. Delvalle, neither you nor the government is allowed to

21    argue to the sentencing judge for a calculation that's

22    different from the one in the plea agreement.  The plea

23    agreement also provides that neither you nor the government

24    will seek or suggest any upward or downward departure from this

25    stipulated guidelines range, except that you may seek a

1   sentence outside of the agreed-upon range based on other

2   factors to be considered under Title 18 of the United States

3   Code, Section 3553(a).

4          Now, the government has reserved the right to seek an

5   adjusted guidelines range if it learns new information about

6   your criminal history or if you fail to clearly demonstrate

7   acceptance of responsibility for your crime, if it's determined

8   that you've engaged in conduct currently unknown to the

9   government that constitutes obstruction of justice, or if you

10  commit another crime after signing the plea agreement.

11         Do you understand all of this?

12         THE DEFENDANT:  Yes.

13         THE COURT:  I also want to make sure that you

14  understand that neither the probation department nor this Court

15  is bound by any recommendations or computations in the plea

16  agreement, and the district judge, that's Judge Marrero, who

17  will be the sentencing judge, is free to do and in fact obliged

18  to do his own calculation of the appropriate sentencing range

19  in your case, and his calculation may result in a sentencing

20  range that differs from the one in the plea agreement.  Judge

21  Marrero has the discretion to give you a prison sentence below

22  or above the range set forth in the plea agreement or that he

23  independently computes is the appropriate range for you

24  anywhere up to the maximum sentence that I told you about

25  earlier.

1    Do you understand all of this?

2    THE DEFENDANT:  Yes.

3    THE COURT:  In determining -- do you need time to talk

4    with your lawyer?

5    THE DEFENDANT:  Yes, ma'am.  Yes, your Honor.

6    THE COURT:  You're ready to go forward?

7    THE DEFENDANT:  I want to talk to him first.

8    THE COURT:  Go ahead and talk.  That's fine.

9    (Defendant conferred with counsel)

10    THE DEFENDANT:  You can continue.

11    THE COURT:  Are you ready to proceed?

12    THE DEFENDANT:  Yes, yes.

13    THE COURT:  In determining an appropriate sentence,

14    Judge Marrero will consider the sentencing guidelines, possible

15    departures under those guidelines, and all of the factors set

16    forth in Title 18 of the United States Code, Section 3553(a).

17    In addition, Judge Marrero will consider a presentence report

18    prepared by the probation department, and you'll have a chance

19    to review that report with your attorney before sentencing and

20    challenge any facts in that report.  Ultimately, Judge Marrero

21    will determine your sentence based on all of the factors I've

22    explained, and that sentence may be more severe than you

23    expect, but you will not be able to withdraw your guilty plea

24    at that point.

25    Do you understand?

1     THE DEFENDANT:  Yes.

2     THE COURT:  Under the terms of the plea agreement, you

3 cannot appeal and are agreeing not to appeal your conviction

4 directly or indirectly, such as through a petition for a writ

5 of habeas corpus.  And also, so long as Judge Marrero sentences

6 you to a prison term of no longer than 480 months, you're

7 giving up your right to challenge that sentence by direct

8 appeal or through a petition for a writ of habeas corpus or

9 otherwise.

10     Do you understand?

11     THE DEFENDANT:  Could I get a minute?

12     THE COURT:  Yes.

13     (Defendant conferred with counsel)

14     MR. RICCO:  Hello?

15     THE COURT:  Hi.  We're taking just a short break while

16 Mr. Delvalle consults with Mr. Rollock and Mr. Neufeld.  OK?

17     MR. RICCO:  Yes.  Thank you, your Honor.

18     MR. NEUFELD:  We're ready to proceed, your Honor.

19     THE COURT:  You're ready to proceed?

20     MR. NEUFELD:  Yes.

21     THE COURT:  All right.  Mr. Delvalle, do you

22 understand everything I've said up to now?

23     THE DEFENDANT:  Yes.

24     THE COURT:  Under the plea agreement, you're also

25 giving up your right to challenge any term of supervised

1    release imposed by the Court up to the lifetime maximum I told

2    you about earlier, whether by direct appeal or collaterally,

3    such as through a petition for writ of habeas corpus.

4              Do you understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  You're also agreeing not to challenge your

7    conviction on appeal on the ground that the government failed

8    to produce certain information that might have been helpful to

9    you at trial.

10             Do you understand?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Under the plea agreement, you're also

13   agreeing not to appeal any fine of $5 million or less or the

14   $100 special assessment, either directly or indirectly.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Do you understand that if you

18   are not a citizen of the United States, your guilty plea and

19   conviction will presumptively result in your mandatory

20   deportation and removal from the United States, and then you

21   won't have any right to withdraw the plea by virtue of any

22   adverse immigration consequences?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You also would not be able to challenge

25   any adverse immigration consequences directly or indirectly.

JBFHDELP

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  The U.S. Attorney is not making any

4   agreement not to prosecute you for criminal tax violations in

5   connection with the crimes charged in the information.  So that

6   means you could still be prosecuted for criminal tax violations

7   in connection with the crime, but if you fully comply with your

8   obligations under the plea agreement, no testimony or other

9   information given by you will be used in a criminal tax

10  prosecution, and you will not be further prosecuted by the U.S.

11  Attorney's Office for the Southern District of New York for the

12  crimes charged in Count One of the information, and the U.S.

13  Attorney's Office will move to dismiss any open counts against

14  you.  You're also agreeing not to seek attorney's fees in

15  connection with any dismissed counts.

16          Do you understand everything I've just said?

17          THE DEFENDANT:  Yes.

18          THE COURT:  I also want to make sure that you

19  understand that the plea agreement is binding only on the U.S.

20  Attorney's Office for the Southern District of New York and not

21  any other prosecutor's office, such as a state prosecutor.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Before I go on, does the government want

25  me to review any other provisions of the plea agreement with

1   Mr. Delvalle?

2          MS. FEINSTEIN:  Yes.  There's one provision, your

3   Honor.  It's on page 1.  It's the second paragraph, and it

4   says:  "The defendant agrees to waive any defense or argument

5   based on the statute of limitations applicable to Count One."

6   We'd appreciate if the Court would allocute the defendant on

7   that.

8          THE COURT:  All right.  Mr. Delvalle, in the plea

9   agreement on the first page -- I think you have it in front of

10  you.  Is that right?

11         THE DEFENDANT:  Yes.

12         THE COURT:    -- you are agreeing under the plea

13  agreement to waive any defense or argument based on statute of

14  limitations in connection with this crime.

15         Do you see that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand what that means?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Have you had a chance to speak with your

20  lawyer about that?

21         THE DEFENDANT:  Can I get a moment, please?

22         THE COURT:  Yes.

23         (Defendant conferred with counsel)

24         THE COURT:  Do you understand what that means,

25  Mr. Delvalle?

JBFHDELP

1         THE DEFENDANT: Yes.

2         THE COURT: And you agree to that?

3         THE DEFENDANT: Yes.

4         THE COURT: Mr. Neufeld, are there any other

5 provisions of the plea agreement that you'd like me to review

6 with your client before we go on?

7         MR. NEUFELD: No, your Honor.

8         THE COURT: Mr. Delvalle, aside from what's in the

9 plea agreement itself, have any promises been made to you to

10 influence you to plead guilty?

11         (Defendant conferred with counsel)

12         THE DEFENDANT: No.

13         THE COURT: Have any promises been made to you

14 concerning the actual sentence that you will receive to get you

15 to plead guilty?

16         THE DEFENDANT: A below-guidelines sentence.

17         THE COURT: Somebody promised you that you would get a

18 below-guidelines sentence?

19         THE DEFENDANT: Not a promise, but a big maybe.

20         THE COURT: Oh, so you understand there could be a

21 possibility of that?

22         THE DEFENDANT: Yes.

23         THE COURT: All right. But that wasn't promised to

24 you?

25         THE DEFENDANT: No.

1      THE COURT:  Have any threats been made to you to

2  coerce you into pleading guilty?

3      THE DEFENDANT:  No.

4      THE COURT:  Now that you have been advised of the

5  charges against you and the possible penalties that you face

6  and rights you're giving up, do you still wish to plead guilty

7  to Count One of the information?

8      THE DEFENDANT:  Yes.

9      THE COURT:  Is this decision voluntary and made of

10  your own free will?

11      THE DEFENDANT:  Yes.

12      THE COURT:  With respect to Count One, Mr. Delvalle,

13  how do you plead, guilty or not guilty?

14      THE DEFENDANT:  Guilty.

15      THE COURT:  Are you pleading guilty because you, in

16  fact, committed this offense?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Tell me in your own words what you did

19  that makes you guilty of this crime.

20      (Defendant conferred with counsel)

21      THE COURT:  Speak into the microphone, if you would,

22  for the court reporter, and just go slowly.

23      THE DEFENDANT:  During the period of 2009 to 2011, I

24  agreed with others to sell 28 grams of crack cocaine in the

25  Bronx, New York.  On August 31, 2010, I participated in the

1    murder of Darnell Harris in the Bronx, New York.

2             THE COURT:  I notice that you were reading something.

3    Are those your own notes to help you with today?

4             THE DEFENDANT:  Yes.

5             THE COURT:  When you entered into this agreement, did

6    you understand that you were agreeing to sell these drugs?

7             THE DEFENDANT:  Yes.

8             THE COURT:  And it involved how much drugs?

9             THE DEFENDANT:  28 grams.

10            THE COURT:  28 grams and more?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Did you know what you were doing was wrong

13   and against the law?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Does the government believe there's a

16   sufficient factual predicate for a plea?

17            MS. FEINSTEIN:  Yes, your Honor.

18            THE COURT:  Are there any other questions you'd like

19   me to ask Mr. Delvalle?

20            MS. FEINSTEIN:  No, your Honor.

21            THE COURT:  Mr. Neufeld, do you believe there's a

22   sufficient factual predicate for a plea?

23            MR. NEUFELD:  Yes, I do.

24            THE COURT:  Are there any other questions you'd like

25   me to ask your client?

JBFHDELP

1        MR. NEUFELD:  No.

2        THE COURT:  Are you aware of any defense that would

3  prevail at trial or other reason why your client should not be

4  permitted to plead guilty at this time?

5        MR. NEUFELD:  No.

6        THE COURT:  Ms. Feinstein, does the government

7  represent that it has sufficient evidence to establish guilt

8  beyond a reasonable doubt at trial?

9        MS. FEINSTEIN:  We do, your Honor.

10       THE COURT:  Would you like to make a proffer?

11       MS. FEINSTEIN:  Yes.  If we were to proceed to trial,

12  the government's proof would include, among other things, the

13  testimony of law enforcement witnesses, civilian witnesses, and

14  cooperating witnesses, as well as the statements of the

15  defendant.

16       THE COURT:  All right.  Thank you.

17       Mr. Delvalle, on the basis of your responses to my

18  questions and my observations of your demeanor, I find that

19  you're competent to enter a guilty plea, and I'm satisfied that

20  you understand your rights, including your right to go to trial

21  and have the charges presented to you and considered by the

22  grand jury.  I find that you're aware of the consequences of

23  your plea, including the sentence that may be imposed, and that

24  you're voluntarily pleading guilty and that you've admitted

25  that you are guilty as charged in Count One of the information.

JBFHDELP

1    So for these reasons, I'm going to recommend that

2  Judge Marrero accept your plea. I'm also going to direct the

3  government to order a transcript of this proceeding and send it

4  along to Judge Marrero and to prepare a case summary for the

5  probation department.

6    MS. FEINSTEIN: Yes, your Honor.

7    THE COURT: Mr. Neufeld, will you have time to meet

8  with probation and your client sometime in the near future?

9    MR. NEUFELD: Yes.

10    THE COURT: Has Judge Marrero set a sentencing date?

11    MS. FEINSTEIN: He has not, so we would request a

12  control date from the Court.

13    THE COURT: How about a three-month control date; is

14  that all right?

15    MS. FEINSTEIN: Yes.

16    THE COURT: So we'll set the control date for

17  February 18 of 2020.

18    MR. NEUFELD: That's fine.

19    THE COURT: Is that OK?

20    MS. FEINSTEIN: Works for the government. Thank you.

21    THE COURT: Is there anything further from the

22  government on this matter?

23    MS. FEINSTEIN: Not from the government. Thank you.

24    THE COURT: Anything further, Mr. Neufeld?

25    MR. NEUFELD: No.

1      THE COURT:  All right.  Mr. Ricco, we're concluding

2  the proceeding now.  Is there anything further?

3      MR. RICCO:  No, your Honor, other than I wanted to

4  thank you for allowing me to participate by telephone

5  conference and also to thank Mr. Delvalle for giving his

6  consent for this to happen.  Thank you very much, your Honor.

7      THE COURT:  No problem.

8      All right.  We're adjourned, then.  Thank you.

9      (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 6, 2019

**BY HAND**
The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Kevin Delvalle**
              **S3 17 Cr. 314 (VM)**

Dear Judge Marrero:

      Attached please find the plea materials for Kevin Delvalle, including Information S3 17 Cr. 314, the plea agreement, the transcript of the plea before the Magistrate Judge, and a proposed order of acceptance. The Government respectfully requests that the Court accept Delvalle's guilty plea.

                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney

                    By:    /s/
                          Jessica Feinstein
                          Assistant United States Attorneys
                          (212) 637-1946

cc: Counsel for Kevin Delvalle (by email)